

**RECEIVED**
9/9/2020
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| AVALON SMOKE SHOP, | ) | **JUDGE KENNELLY** |
| PLAINTIFF, | ) | **MAGISTRATE JUDGE COLE** |
| | ) | **1:20-CV-05316** |
| V. | ) | |
| | ) | |
| ILLINOIS DEPARTMENT OF FINANCIAL | ) | |
| AND PROFESSIONAL REGULATION; | ) | |
| BRETT BENDER, DEPUTY DIRECTOR; | ) | |
| ILLINOIS OFFICE OF MINORITY ECONOMIC | ) | |
| EMPOWERMENT; ALMA M. TELLO, DEPUTY | ) | |
| DIRECTOR; and AS-YET UNKNOWN | ) | |
| DEFENDANTS. | ) | |

## COMPLAINT

Plaintiff, hereby submits this complaint against the Defendants. In Support of the relief requested herein, Plaintiff states as follows:

### INTRODUCTION

1. This week the State of Illinois intends to award a total of 75 Adult Use Cannabis Dispensary Licenses to 21 companies. The value of said licenses is estimated to be above $1 Billion. The names of said companies were released last week and it has since been revealed that many of the recipients are politically connected within in the State of Illinois and/or KMPG which is the company used to grade the License Applications.

KMPG was awarded a NO BID contract by the State of Illinois to decide the recipients of the Licenses.

2. The State of Illinois received over 4000 applications from over 700 applicants who desired to open a dispensary. Many of the applicants were Social Equity Applicants that were supposed to receive Technical Assistance and Financial Assistance which were not given during the application period.

3. The 21 Companies that were awarded licenses qualified for the additional 5 point bonus point given to Veterans. This additional awarding of points was discriminatory against individuals who've never served in the Military.

4. The State of Illinois failed to put in place safeguards to prevent fraud from individuals who were ineligible for Social Equity Status. Many applicants formed agreements with individuals for the sole purpose of utilizing their address, criminal records or employment status to qualify for the additional social equity points.

5. The State of Illinois has denied over 700 Applicants the right to an administrative hearing or Judicial Review to appeal the findings. The States decision to restrict the applicants right to an appeal is unconstitutional and cannot be permitted.

6. Accordingly, in conjunction with this complaint, Plaintiff herein seeks injunctive relief for the reasons specified below.

## JURISDICTION AND VENUE

7. This court has jurisdiction pursuant to 28 U.S.C. 1331 and 28 U.S.C. 1367, Plaintiff brings a federal claim arising under the United States Constitution as well as a state law claim so related as to form part of the same case or controversy. Venue is pursuant to 28 U.S.C 1391 as the events giving rise to these claims occurred in this district, the

Plaintiff's Principle Place of business is in this district and the defendants maintains their offices in this district.

## PARTIES

8. Plaintiff Avalon Smoke Shop LLC, is 100% owned by a African American Woman who resides in a community disproportionately impacted by Cannabis.
9. Defendant, Brett Bender, is the Deputy Director of the Illinois Department of Financial and Professional Regulation.
10. Defendant, Alma M. Tello is the Deputy Director of the Office of Minority Economic Empowerment.

## BACKGROUND

11. In 2019, the General Assembly passed the Cannabis Regulation and Tax Act (the "Act"). The Act was suppose to ensure that individuals impacted by Cannabis would have fair chance at being awarded a license. This Act allowed for Medical Use Only Dispensaries already licensed in the State of Illinois to receive the 1st round of Recreational Use Licenses. By allowing this, the Act permitted the 1st round of Licenses to go to owners that are majority owned by Caucasian Males.
12. The Act intended to make up for the lack of minority representation by enacting the Social Equity Program which should have given minorities the chance of being awarding 75 additional Recreational/Adult Use Dispensary Licenses ("license").
13. According to the Act, Applicants who qualified for Social Equity would receive Financial Assistance in the form of Loans and Grants, Technical Assistance to assist with completing the application and reduced Application Fees.

14. In October 2019, the Illinois Department of Financial and Professional Regulation ("Department") issued the procedures to earn the license. Applicants would be graded on a point scale up to 250 points which would be graded by KMPG. KMPG was awarded a $4.2M NO-BID Contract to grade submitted Applications.

15. The Department decided 50 of the 250 points would be given if the Applicant qualified for Social Equity. Social Equity Applicant "means an applicant that is an Illinois resident that meets one of the following criteria:

    a. (1) an applicant with at least 51% ownership and control by one or more individuals who have resided for at least 5 of the preceding 10 years in a Disproportionately impacted area;

    b. (2) an applicant with at least 51% ownership and control by one or more individuals who: have been arrested for, convicted of, or adjudicated delinquent for any offense that is eligible for expungement under this Act; or is a member of an impacted family;

    c. (3) for applicants with a minimum of 10 full-time employees, an applicant with at least 51% of current employees who: currently reside in a Disproportionately Impacted area or have been arrested for, convicted of, or adjudicated delinquent for any offense that is eligible for expungement under this Act or member of an impacted family.

16. The Department also granted 5 additional points to individuals that have a current status of a Veteran.

17. In September 2019, the Plaintiff communicated with the Defendant Alma Tello via email, to determine when the technical workshops would be given to provide applicants with

assistance on completing their application and the completing the loan process. The Plaintiff received no response.

18. In November 2019, the Plaintiff reached out again to Defendant Alma Tello via email, to determine when the technical workshops would be given to provide applicants with assistance on completing their application and the completing the loan process. The Plaintiff received no response.

19. In November 2019, the Plaintiff reached out to the Defendant the Department, to determine when the technical workshops would be given to provide applicants with assistance on completing their application and the completing the loan process. The Plaintiff phone number was requested and the Plaintiff received an update via phone. The Plaintiff was notified that the Department has no trainings or workshops planned or scheduled. The Plaintiff was notified that the Department was unsure of how to effectively run the workshop due to the process being new. The Plaintiff reminded the Defendant that the ACT mandated that Social Equity Applicants should be giving application assistance and that there were currently business taking advantage of our need of assistance.

20. On December 9, 2019 the Defendants held the 1st technical assistance workshop which had a limited number of seats. It should be noted that the workshop was held the day before the application window opened. The Defendants went on to host additional workshops and the Plaintiff attended one held on December 16,2019. The workshop consisted of a Power Point Presentation of the exact material given on the IDFPR website. The Plaintiff was not given any one on one assistance with the application.

21. Present as well, was a Representative of the John Marshall Law School that informed attendees of a program they offer to applicants that would provide assistance with Application. This representative informed Attendees that program was over for the semester and the program wouldn't open again until the end of January. The attendees were essentially provided information for a program that was of no use to them as the application was due January 2, 2020. At one point, a speaker informed the attendees that if they'd yet to start the application than it was already too late. The Speaker failed to realize that Defendants inability to provide effective and timely workshop/resources caused many social equity applicants to get a late start.

22. At the workshop held on December 16, 2019 the Plaintiff was also notified of the procedure to obtain the Social Equity Loan that was necessary to complete Exhibit O – Financial Information in the application. The requirements for Exhibit O states that applicants provide a statement, and any supporting documentation you wish to provide, attesting that if granted a license the applicant will have access to sufficient funds to own and operate an adult use cannabis dispensing organization. The Plaintiff was informed that the loans wouldn't be processed in time to provide evidence of approval of the loan. It was recommended during the workshop that instead of providing Proof of Funds to simply write that the Plaintiff intends to apply for a loan through the Social Equity Program. This solution was unacceptable and had the potential to negatively impact Social Equity Applicants. The Plaintiff expressed concerns that Social Equity Applicants who were relying on loans from the Department would appear insufficient compared to applicants that were able to obtain funding outside of the Social Equity Program.

23. The Department failed to put in place safeguards to prevent fraud from individuals who were ineligible for Social Equity Status. Many applicants formed agreements with individuals for the sole purpose of utilizing their address, criminal records or employment status to qualify for the additional social equity points. An example of this can be found in a Chicago Sun Times Article titled "Lawmakers warn 'unscrupulous businesses' are using social equity candidates as fronts in bid to get new pot licenses in Illinois". The article reported of an Social Equity Applicant being approached by Companies to be used as a Front or Cover as the majority owner. Many companies that wouldn't typically qualify made agreements with individuals to act as owner only for ownership to be replaced in a few years.

24. By allowing companies to put in place deceptive ownership charts, the Plaintiff was directly punished. The real owners of these companies have more insider knowledge than a true Social Equity Applicant could possess without having hands on experience in this industry. Many of the companies granted a license have questionable majority ownership that needs to be vetted by an independent investigator. The Department also needs to put in place more stringent measures to prevent this from occurring in the future.

25. To add further insult to injury, the Plaintiff discovered the Map for Disproportionately Impacted Communities included communities that do not appear to impacted. For Example, the address 200 W Oak St, Chicago, Il 60610 would qualify as a Social Equity. This address is only 4 blocks away from Perillo BMW and 6 blocks away from Gibson's Steak House. This location is Downtown Chicago and shouldn't qualify anyone as Social Equity Status.

26. On September 3, 2020, the Department released the name of the Recipients of Dispensary License. Out of the 700 plus applications, KPMG determined that only 21 Companies qualified for licenses. It has been determined that many of the companies have political influence in the State of Illinois with one manager being an employee of KPMG. The list includes a former Super Intendent of the Chicago Police Department, the leader of the Illinois Cannabis Trade Association/lobbying group, the owner of a successful and influential Gold Coast Restaurant and at minimum one Democratic lobbyist.

27. The Department stated, that these companies obtained the maximum number of points which includes the five additional points for having a veteran as a majority owner. The Plaintiff submitted an application that contained all the necessary information to obtain a high score minus the five points for being a veteran. The Plaintiff has been discriminated against and punished for not serving in the military. Being a Veteran, should not be a mandatory requirement of the Department in order to open a Dispensary in the State of Illinois. The Departments interpretation of the Act and decision to award Veterans an additional 5 points has prevented the Plaintiff from being eligible for a Dispensary License.

28. In following the Emergency Rules published by the Department, a lottery will be held with the 21 tied applicants to determine the final winner of the 75 licenses. The earliest the lottery could be held is Sept 10, 2020. The Department has announced that there will be no agency administrative hearing to appeal the decision and that the only recourse is to file a lawsuit.

29. Having established a procedure where the State is going to give away more than a billion dollars of valuable Licenses to what appears to be a group of 21 politically-connected

insiders, it is unconstitutional to deny the 4,000+ unsuccessful applications any ability to timely challenge the process by which they were not selected to participate in this Lottery. Due process requires a procedure be made available in time to obtain a meaningful remedy of participating in the lottery process.

30. Moreover, state law authorized a total of 75 Licenses; there is no statutory authorization to award more Licenses. If the Lottery proceeds and these Licenses are awarded, the winning applicants begin the process of building their dispensaries. The Department will likely argue that there is no ability to make whole (award a new License) to any unsuccessful applicants who can subsequently prove they should have been permitted to participate in the Lottery, much less that they would have won a License by lot.

31. The way the process has been set up by the Department, the Plaintiff has no opportunity to challenge the denial of their eligibility to participate in the Lottery. By design, there is no administrative review. By the time the Plaintiff has any opportunity for judicial review, even if any be proven to the Court's satisfaction they should have been a candidate for licensure, the State will argue that it is too late to afford them a License, because the Lottery will have already occurred, and the 75 dispensaries will be under construction.

32. That process does not comport with due process. Where- as the State is awarding enormously valuable Licenses to politically-connected insiders, there has to be at least some opportunity for meaningful judicial review. Because the process here was specifically designed to avoid that opportunity, the Lottery should be enjoined until the State provides the Plaintiff (and all others who ask) an opportunity to challenge the

Department's decision and the information with which to do so, as well as the ability to receive a chance for a license should the Court deem it to be appropriate.

33. At the time, The State of Illinois has a sufficient number of Recreational and Medicinal Dispensaries to meet the needs of residents. The residents of the State of Illinois will not be faced with undue burden if the 75 licenses are delayed until all issues are resolved by the Defendants' .

## COUNT I DUE PROCESS

34. Plaintiff reallege all allegations of this Complaint as if fully set out herein.

35. By all of the above, Defendants, and each of them, are improperly denying Plaintiff a fair opportunity to challenge the decision to exclude them from the Lottery in a meaningful way at a meaningful time. As a result the Plaintiff is being deprived of property rights without due process of law and lack an effective remedy. Plaintiff have been injured as a direct and proximate result.

36. Plaintiff is entitled to sufficient notice of the basis, if any, underlying the Department's decision that they are not a qualified Applicant, and a fair hearing process to challenge that basis. Moreover, this process must be afforded at a meaningful time when relief can still be effectively granted.

37. To preserve Plaintiff ability to obtain a remedy and this Court's ability to afford one, the Court ask the court to Enjoin Defendant as follows:

    a. Enjoin Defendants from conducting the Lottery until after the Plaintiff has received a fair opportunity for judicial review as to the Department's bases for its finding against them, and a determination of the validity of the Department's decision;

b. Enjoin that Defendants must conduct an Independent Investigation to ensure that there were zero instances of Fraud in awarding the 21 Licenses. The Department has to provide evidence that the recipients are true Social Equity Applicants. The Department should also make public any Partnership Agreements held by the 21 Social Equity Applicants to further ensure that the Companies qualify as Social Equity.

c. Enjoin that Defendants must stop the issuance of the Licenses and provide Social Equity Applicants with Application Assistance and Proof of Funds Letters. The Defendants should allow companies that submitted the application during the initial application period a chance to resubmit their completed application once the Defendant provides the required workshops.

d. Enjoin that Defendants shall remove the 5 additional points awarded for Veteran Status.

e. Enjoin that Defendants must conduct an Independent Investigation to review the Disproportionately Impacted Map to ensure that locations are actual communities impacted by Cannabis.

### Count II – Denial of Access to Courts

38. Plaintiff reallege all allegations of this Complaint as if fully set out herein.
39. Defendants are refusing to afford Plaintiff a procedure consistent with Due Process to challenge its decision denying them the opportunity to enter the lottery.
40. Although Defendants have invited all non-eligible applicants to file lawsuits to challenge the Department's decision, Defendants intend to deprive the court of the ability to

provide relief for any violation. Specifically, Defendants intend to award the Licenses before any court can act.

41. By all of the above, Defendants, and each of them, are depriving Plaintiff of access to court. Even if Plaintiff proves a violation by the Department and entitlement to Tied Applicant status, it will contend that no Licenses will remain to be awarded and that this Court has now power to grant relief. Plaintiff has been injured as a direct and proximate result.

42. To remedy at least part of Plaintiff' injuries, the Court should enjoin Defendants as follows:

    a. Enjoin Defendants from conducting the Lottery until after Plaintiff has received a fair opportunity for judicial review as to the Department's bases for its finding against them, and a determination of the validity of the Department's decision;

    b. Enjoin that Defendants must ensure an Independent Investigation to establish that there were zero instances of Fraud in awarding the 21 Licenses. The Department has to provide evidence that the recipients are true Social Equity Applicants. The Department should also make public any Partnership Agreements held by the 21 Social Equity Applicants to further ensure that the Companies qualify Social Equity.

    c. Enjoin that Defendants shall remove the 5 additional points awarded for Veteran Status.

    d. Enjoin that Defendants shall review the Disproportionately Impacted Map to ensure that locations are actual communities impacted by Cannabis.

### Count III – Administrative Review

43. Plaintiff reallege all allegations of this Complaint as if fully set out herein.

44. On or about September 3, 2020, The Department made final administrative decisions affecting Plaintiff' rights. A copy of the decisions are attached hereto.

45. Plaintiff has asked the court to review the decisions because they are not in accordance with the law, inter alia, for the reasons explained in this Complaint.

46. Plaintiff further request the Court to Enjoin the Department to file an answer to this Complaint consisting of the entire record of the process and grading resulting in the decision on the Plaintiff' application and on the applications of those deemed Tied Applicants.

47. Plaintiff have exhausted all available remedies under the Administrative Review Law and has no further plain, speedy, adequate remedy under the law.

48. Therefore, the Plaintiff ask the court to extend other remedies or fair hearing and to extend the time to institute a fair hearing process to their decision under the Law.

WHEREFORE, Plaintiffs respectfully request that Court grant the injunctive relief sought herein, as well as any other relief available in equity or at law, including but not limited to the Licenses under consideration.

Respectfully Submitted,
Avalon Smoke Shop LLC
/S/ Naomi Williams Owner

Avalon Smoke Shop LLC
7930 S Drexel
Chicago, IL 60619
773-426-2276